# N. Y. SUPREME COURT:

## J. Augustus Page agt. Patrick McDonnell *et al.*

Where a purchaser and vendor enter into a contract for the sale of real
estate free from incumbrance, except as stated in the contract, and the
purchaser makes a payment down of a part of the purchase-money, the
remainder to be paid and adjusted at a future day appointed, when
the deed is to be delivered, and on the tender of the deed by the vendor
on the day specified the purchaser objects to accepting it on the ground
of an assessment upon the property, but says he is willing to take the
deed when the vendor can give him a good title, and on the next day
the vendor, having paid off the assessment, tenders the purchaser the
deed again and requests performance of the contract, which the pur-
chaser refuses on the ground that there are unexpired leases on the pro-
perty, which was known to the purchaser and provided for in the con-
tract, this last refusal of the purchaser to take the title puts an end to the
contract, and he cannot recover back his payment made to the vendor.

*First Department, New York General Term, May,* 1873.
*Before* Ingraham, *P. J.,* Learned *and* Brady, *JJ.*

On the twenty-fourth day of November, 1868, the plaintiff
and the defendants made and executed the contract of sale
set out in the complaint in this action.

At the time the premises described in said contract were
subject to certain leases at an aggregate rent of about $4,200
a year, payable monthly in advance; all of which would expire
on the first of May following.

The plaintiff, when he executed the contract, knew of the
existence of all these leases, and the understanding was that
he should receive the rents to accrue thereon from the date of
the contract, in consideration of the agreement on his part to
pay interest from the same period on the unpaid portion of
the purchase-money for said premises.

On the execution of the contract, the sum of $2,000 was

Page agt. McDonnell.

paid by the plaintiff to the defendants, as and for the first payment said contract provided for.

On the tenth day of February, 1869, at one o'clock precisely, in the afternoon of that day, the defendants attended and were at the office of Beeman & Haws, No. 175 Broadway, in the city of New York, for the purpose of fulfilling their part of said contract, and waited there for the plaintiff over two hours.

The plaintiff did not make his appearance during that time, but the defendant, Patrick McDonnell, afterwards, and on the same day, met him in the street, and tendered him a proper deed for the premises in question, which deed was duly executed and acknowledged by both of said defendants, and contained a general warranty and the usual full covenants for the conveying or assuring to the plaintiff the fee simple of said premises, free from all incumbrances, except the mortgages in said contract referred to, and accompanying said deed were the necessary United States revenue stamps therefor.

The plaintiff then objected that there was a lien on said premises for an assessment for the extension of Church street between Fulton and Morris streets, but said he was willing to take the property when the defendants could give him a deed according to the contract.

On the next day, the eleventh of February, the defendant, Patrick McDonnell, paid off said assessment, and obtained a proper receipt, discharging said premises from the lien of the same, and showed such receipt to the plaintiff, and again tendered him the deed, together with a statement in writing of the amount of rents which he had collected on said leases, since the date of the contract, and the money for the same in greenbacks, and called for the execution of the contract on the part of the plaintiff.

The plaintiff again refused to take the deed and fulfill on his part, alleging as a reason that he regarded the leases on the premises, which would not expire until the first of May

following, as incumbrances. There were no other leases on said premises at that time than those which existed thereon when the contract was made, and of which the plaintiff had knowledge as aforesaid. The defendant, Patrick McDonnell, in reply, said that the plaintiff knew of these leases when the contract was made, and that if he refused to take the deed and fulfill the agreement on his part, the defendants would consider the agreement at an end. The plaintiff persisted in his refusal to take the deed until said leases should be terminated, and he could have immediate possession of the premises, but said that "he meant to have the property;" and the defendants afterwards renewed the leases in question for another year.

C. GOEPP, *for the plaintiff, appellant.*

I. The defendants did not acquire a right, by plaintiff's refusal to accept the second tender, to consider the contract at an end, without returning the money paid by the plaintiff.

"Generally, no contract can be rescinded by one of the parties, unless both can be restored to the condition in which they were before the contract was made" (2 *Pars. on Contr.,* 679 ; *and see fully id., note* [a] *citing Hunt* agt. *Sills,* 5 *East,* 249).

If Mr. Page's refusal to accept on the 11th of February was a breach of his contract, the defendants had their choice of two remedies; one to return the $2,000 and rescind the contract, the other to bring an action for specific performance, or for their damages, if they had sustained any. They cannot rescind the contract and nevertheless keep the money received upon it. They elected to rescind, but did not return the money.

*Junkins* agt. *Simpson* (14 *Maine,* 364), is a case closely in point. Simpson had exchanged oxen with Junkins, and had paid him ten dollars to boot. Junkins discovered that the oxen received by him were subject to a mortgage. He drove

them back, and took his original oxen home again. *Held*, that he had no right to rescind the contract *without refunding the ten dollars*.

A contract cannot be rescinded by one of the parties for the default of the other, unless both of them can be put in the same state as before the contract. It cannot be rescinded as to one party, and remain in force as to the other. It must be rescinded *in toto*, and if the party rescinding has received property of any value, however inconsiderable, under the contract, he must restore it to the other party (WILDE, J., *in Coolridge agt. Brigham*, 2 *Metcalf*, 550).

Where a vendee seeks to rescind for want of title in the vendor, he must restore to the vendor all he received, and place him back in his original position (*Brown* agt. *Witter*, 10 *Ohio*, 142).

Assuming, for the sake of argument, that Mr. Page was in default in refusing to accept the conveyance on the eleventh of February, he did not thereby forfeit the $2,000. Had the McDonnells claimed specific performance, Page would have been entitled to his credit for the $2,000 on the purchase money. Had they sued for damages, he would have been entitled to recoup the $2,000 against any damages they could have shown. They did neither, but elected to rescind the contract. This leaves them liable to return the plaintiff the $2,000 with their interest.

Under the Code this court has the most ample powers to give equitable relief in this action, and relief to which the facts proved entitle the plaintiff, without regard to the form of the prayer of his complaint.

The case of *Ketchum* agt. *Evertson*, cited by the court below, to the point that Mr. Page cannot recover the hand money, proceeded on the assumption that the plaintiff (the vendee) had himself violated the contract. If we succeed in showing that Mr. Paige was not in default, the principle of *Ketchum* agt. *Evertson* does not apply. But not only was the plaintiff in default, in *Ketchum* agt. *Evertson*, but the

defendant was not. Now, in the case at bar, the defendants were clearly at fault.

It is this circumstance which distinguishes *Ketchum* agt. *Evertson* from *Raymond* agt. *Bearnard* (12 *Johns.*, 274). There the plaintiff was in default, and the defendants availed themselves of the default to rescind. " Therefore the defendants ought not to be permitted to set up the contract which they have themselves rescinded for holding the money advanced " (1 *Term R.*, 133; 1 *Bos. & Pu.* [*N. S.*], 353; 5 *Johns. R.*, 87; 7 *id.*, 132).

*Raymond* agt. *Bearnard* is sustained, and the distinction between it and *Ketchum* agt. *Evertson* fully explained, in *Monroe* agt. *Reynolds* (47 *Barb.*, 579). " The mere neglect to perform does not authorize the other party to treat the contract as rescinded or abandoned. The seller must go further " (*Dubois* agt. *Del. & Hud. Can. Co.*, 4 *Wend.*, 289; *Main* agt. *King*, 8 *Barb.*, 535; *Fancher* agt. *Goodman*, 29 *id.*, 315).

II. The plaintiff did not agree to extend the defendants' time for performance, when defendants failed to perform on the 10th of February, 1869.

Both in the findings of fact and in the opinion of the court it is said that " the plaintiff told McDonnell he was willing to take the conveyance *when* McDonnell could give a good title." The witness' words are : " I told him I was ready to take the property *if* he could give me a deed *according to the contract*." The difference between " when " and " if " is not great, but is sufficient to decide this question. The plaintiff did not offer to wait to a subsequent day, but offered to comply *then*, if defendant would comply then. On the evening of that day he had an unqualified election to insist on the specific performance of the contract, or to claim damages for its non-performance, or to rescind it. That election still belongs to him, because the defendants have declined to avail themselves of the opportunity afforded by the notice of April twenty-ninth.

The result is that it was entirely optional with the plaintiff to take the conveyance on the 11th of February or not, and that if he chose not to do so, it is wholly immaterial whether the reason he gave was a good or a bad one. The utmost effect that could be given to his refusal, if made for an insufficient reason, is that he thereby waived his right to specific performance.

III. The leases in question were "incumbrances" within the meaning of the contract.

The court find, not as matter of fact, but as matter of law, that the leases "were not regarded by the parties, at the time they executed the contract, as incumbrances." From the circumstance that this is found as a conclusion of law, the inference would arise that it is the interpretation given to the deed, without looking out of its four corners. But on examination of the document, this is hardly probable.

There is not a word *in the agreement* that will bear the construction that Mr. Page agreed to buy subject to leases and lettings to May 1st, 1869. The words "and to receive the rents from the date hereof" import no such agreement on Mr. Page's part. They are abundantly satisfied by referring them to rents to accrue between November 24th, 1868, and February 10th, 1869, or March 1st, 1869, at furthest, to which date Mr. Page probably understood them to refer.

The fact that the mortgage and all intervening taxes and assessments are expressly excepted, would seem sufficient alone to prevent the exception from being extended to leases.

That an outstanding lease is an incumbrance will not be disputed (*See Jerome* agt. *Scudder*, 2 *Robt.*, 169).

On reference to the opinion of the court, however, it becomes manifest that this construction of the instrument is not drawn from the four corners. The court say: "I think the parol evidence shows that when the plaintiff executed the agreement, the leases were not regarded as incumbrances within the meaning of the contract."

So then this finding is a finding of fact, deduced from parol

evidence. The opinion does not indicate how the evidence is held to prove the finding. We contend that it is impossible to draw such an inference from the evidence.

Taken most strongly for the defendant, McDonnell's testimony shows that he, the vendor, before the agreement of sale was made, informed the vendee that there were *then* other incumbrances on the property besides the $14,000 mortgage. After giving this information he, nevertheless, covenants, under seal, to convey the property on the 10th of February, 1869, *clear of all incumbrances except the mortgage.* Mr. Page had a right to rely on this covenant, and to assume that McDonnell would find means to remove the other incumbrances by the 10th of February. This is what McDonnell, by his contract, bound himself to do.

It is an every-day occurrence for a vendor to covenant to give a free title in the future when there are incumbrances at the time of making the contract, and when that fact is known to the vendee.

If Mr. McDonnell desired and intended to sell the property subject to leases up to May 1st, 1869, he should have inserted a provision to that effect in his sealed contract of sale.

It would be most unsound doctrine to hold that proof of mere *knowledge* by a vendee of the existence, at the time of the contract, of other incumbrances than those stipulated for in the contract, should make it incumbent on him to accept the property subject to those other incumbrances. The vendor's covenant binds him to procure the removal of those incumbrances before the time of conveying, and the vendee has a right to rely on that covenant, and is presumed to do so.

A vendor agrees to sell, clear of incumbrances, except a first mortgage of $14,000. At the time the agreement is made, the property is under a lease of five years, of which the vendee has notice. The time for giving possession arrives, and the lease has not been canceled nor removed. Is the vendee bound to accept? Certainly not. A vendor

may covenant to make title at a future day to land which he does not even own. If he has not succeeded in obtaining a title when the time for conveying arrives, can he defeat the vendee's suit to recover back the money paid by him, and damages, by proof that the vendee knew, at the time of making the contract, that the vendor had no title? There is no reason why he should.

This contract was to procure the title in time to make the conveyance according to the contract.

IV. Parol evidence was not admissible to show that the leases on the premises were not regarded by the parties as *incumbrances* within the meaning of the word *incumbrances*, as used in the agreement.

The court below very unqualifiedly lay down the law, that such evidence *was* admissible, and imply that authorities need not · be cited in support of the position. It is a point on which cases are exceedingly numerous. But it is admitted that there is a line of distinction *somewhere;* and the line has been said to be that extrinsic testimony can only explain and identify the *subject-matter*, but can never qualify the *operation* of the contract. Now these leases were certainly not the subject-matter; the word occurs in fixing the degree of security the purchaser was to have for his purchase.

If Mr. Parsons correctly states the law, *no evidence*, parol or other, could be received to show that the parties, in using the word incumbrances, did not mean what they said. "We cannot," says WILLES, C. J., in *Parkhurst* agt. *Smith* ( *Willes* 332), put a construction on the words of a deed directly contrary to the plain sense of them." "Words," says Mr. Parsons (*vol.* 2, *p.* 494), "must not be forced away from their proper signification to one entirely different, although it might be obvious that the words used, either through ignorance or inadvertence, expressed a very different meaning from that intended." "If the words employed were those intended to be used, but their actual meaning was totally different from that which the parties supposed and

intended them to bear, still this actual meaning would be held to be their legal meaning" (*In p.* 496, *citing Adams' Equity, p.* 169, *et seq.*).

" A contract may be enforced in its plain and natural, or in its legal meaning, although evidence be offered tending to show that the intention of the parties differed absolutely from their language, unless the transaction be void from fraud, illegality, incapacity, or in some similar way " (2 *Pars. Conts.,* 566).

A written agreement to pay $7,000 for building a conduit does not bind the payor to refund the fee paid for a license to top the sewer; and parol proof cannot be received to the contrary (*Thorp* agt. *Ross,* 4 *Keyes,* 546).

Transfer of all the assets of a firm includes a bank account unknown to all the parties; and parol proof cannot be received that an inventory was made at the time, omitting the account (*Crane* agt. *Union Bk. Rochester,* 4 *Keyes,* 558).

Clear and distinct contract, as for carrying specie, cannot be qualified by oral proof of custom, as that the carrier was not responsible for a loss occurring on the Isthmus (*Simmons* agt. *Law,* 3 *Keyes,* 217).

Even a mistake which would have been corrected in equity cannot be corrected in a trial at law by proof of conversations at the time (*Bush* agt. *Tilly,* 49 *Barb.,* 604).

V. It is not proved that the plaintiff knew of the leases on the property when he executed the contract.

Mr. Page's account of the conversation had before the making of the contract is the most probable and the most worthy of belief.

Mr. Haws, a disinterested witness, who was present, and listened, and, as Mr. McDonnell says, was very anxious to bring about this sale, heard no such information given to Mr. Page.

The burden of proving knowledge on the part of Mr. Page, if material, was on the defense. They produce but one witness, the defendant, Patrick, himself, who is positively con-

tradicted by Mr. Page. This leaves the allegation of knowledge " unproven." Hr. Haws' testimony is, negatively at least, in favor of the plaintiff and against the defendants. The preponderance of evidence on this question of knowledge is not only not in defendants' favor, but is positively against them.

Mr. Page undoubtedly knew that the premises were occupied and were bringing rent. He was not informed until what time they were let. He supposed (as he had a right to suppose) that they were let from month to month, and assumed that he would obtain possession by the 1st of March, 1869, at the latest. *He took McDonnell's covenant that he should have possession on the tenth of February.*

The statute, which provides that in the city of New York any indefinite letting shall be held to be a letting until the first of May then next, does not affect the question. When a party about to buy property is informed that it is *then* occupied, this statute raises no presumption that it is occupied to the first of May then next. Notwithstanding this statute, there are many definite lettings of property for a month or less. A great deal of property in New York is habitually and constantly let from month to month. Mr. Page's knowledge that the property was occupied is not knowledge that it was to let to May 1st, 1869.

VI. Appellant's first and eighth exceptions to evidence were well taken. After having proved the contract, the offer to perform by appellant, and the breach, appellant offered to show that about the time of the breach the property went up in value and the plaintiff could have sold it at an advance. This evidence was excluded.

Unfortunately, the counsel who tried the cause for the plaintiff is deceased, and the bills of exception do not disclose the reason of the exclusion.

The general rule that the measure of damages is the highest market price noted between the time of the breach and that of the trial will not be disputed.

Nor is it perceived that there is room to contend that any circumstance takes the case at bar out of that general rule.

It cannot be said that the plaintiff had laid no ground for the question. The making of the contract was admitted in the answer. It was not pretended that defendant had performed. The testimony then given shows he could not. The defendant admitted that plaintiff had offered in writing to perform on his part on the 29th of April, 1869, and it was proved that on the tenth of February he had told defendant he was ready to take the property if defendant could give him a deed according to the contract, and that plaintiff " was ready to pay the money at any time defendant was ready to give the deed."

VII. Appellant's second and ninth exceptions to evidence were well taken.

The loss of interest, if sustained, is certainly an element in the computation of damages.

As argued under the former exception, sufficient ground for this question had clearly been laid.

· VIII. Plaintiff's sixth exception to evidence was. well taken.

Plaintiff's counsel desired to ask the plaintiff, who was on the stand : " When you made that agreement, did you or not expect to get actual possession on the 10th of February, 1869 ?"

The expectations of a witness are always immaterial ; but the expectation of the *party* in this case is the lever by which the defendants are endeavoring to overturn their own sealed agreement. It is the issue of their own making. While the answer, if given, would not have been the weightiest sort of evidence, it is not perceived on what principle it could be excluded.

IX. Appellant's seventh exception to evidence is well taken.

The plaintiff's counsel offered to ask the question : " What is the customary way of letting parts of houses in the city of New York ? "

In the absence of direct information in the particular case, the plaintiff, on being told that the houses were let in apartments, had the right to presume that they were let according to the custom of the place.

COLES MORRIS, *for defendants, respondents.*

I. Most of the foregoing facts are undisputed, and the rest have been found by the learned justice who tried the case upon a conflict of evidence. These findings will not be disturbed by this court (*Baker* agt. *Spencer*, 58 *Barb., S. C. R., p.* 250).

II. The plaintiff did not request the said justice to find either of the facts stated in either of his exceptions twelfth, thirteenth, fourteenth, fifteenth or sixteenth, set out on pages 47 and 48 of the case. There is no evidence in the case of his having made any such request.

III. The plaintiff did not treat the inability of the defendants on the 10th of February, 1869, to convey as they had agreed, as putting an end to the contract, but quite the contrary; and the rights of the parties in this action depend on the transactions which took place between them on the 11th day of February, 1869, when the second tender of the deed was made.

It is entirely immaterial what objections the plaintiff made to the title offered to him by the defendants on the 10th of February, 1869. He did not rescind the contract on account of any such objection, but said he was willing to take the property when the defendants could give him a deed according to the contract. The defendants having paid off the assessment for the extension of Church street, and made a second tender of the deed, &c., on the 11th day of February, 1869, the only question is whether they were able on that day to convey to the plaintiff the premises in question in accordance with their contract. There is no question that the deed which they then tendered to the plaintiff was unobjectionable

in form, and that simultaneously therewith they also tendered to. the plaintiff the rents which had accrued from the premises · from the date of the contract.

Besides, even on the said 11th day of February, 1869, the plaintiff, while still objecting to the title, said that he " meant to have the property."

IV. The only objection which the plaintiff made to the title offered to him by the defendants on the 11th of February, 1869, was that he regarded the leases on the premises, which would not expire until first May following, as incumbrances not excepted by the contract.   There were no other leases on said premises at that time than those which existed thereon when the contract was made.   And the plaintiff does not deny that he had knowledge of the existence of such leases, but he says he thought they were " monthly leases " and did not know that some of them would expire until 1st May, 1869.   The defendant, Patrick McDonnell, on the other hand, testifies that before the contract was signed, he was asked how soon the leases would expire, and that he expressly told the plaintiff " that there were some verbal and some written leases, and that they all expired on first May next ensuing."   And the said justice, upon this conflict of testimony, has found this fact in favor of the defendants.   But there being no pretense of a misrepresentation or fraudulent concealment of this fact by the defendants (if it were a fact), the plaintiff's want of knowledge or mistake in relation to it is entirely immaterial.

Such want of knowledge or mistake on the part of the plaintiff would not avail him, under the circumstances of this case, even if the action had been brought for the express purpose of obtaining relief from the contract in question on that ground, and recovering the purchase-money paid ( *Willard's Eq. Jur., p.* 71; *Taylor* agt. *Fleet,* 4 *Barb., S. C. R., p.* 108).

The mistake must be as to a fact of such a nature that the

party could not by reasonable diligence get knowledge of it when put upon inquiry (*Id.*, *opinion* EDWARDS, *J.*).

V. There cannot be a question that parol evidence was admissible to show that the said leases were not regarded by the parties as incumbrances within the meaning of the word incumbrances, as used in the clause of the contract providing that the conveyance was to be free of all incumbrances, except, &c., at the time they executed the contract.

It is a cardinal point in the construction of contracts that the intention of the parties is to be inquired into, and if not forbidden by law is to be effectuated. Too much regard is not to be had to the proper and exact signification of words and sentences, so as to prevent the simple intention of the parties from taking effect; and whenever the language used is susceptible of more than one interpretation, the courts will look at the surrounding circumstances existing when the contract was entered into, the situation of the parties and of the subject-matter of the instrument. To this extent, at least, the well settled rule is that extraneous evidence is admissible to aid in the construction of written contracts (*French* agt. *Carhart*, 1 *Comstock's R., p.* 102; *Bridger* agt. *Pierson*, 45 *N. Y.*, 604; *Greenleaf's Ev., vol.* 1, § 286).

VI. Considering the provision of the contract, that the plaintiff was to receive the rents of the premises from the date of the contract, the parol evidence which was admitted and given shows beyond a doubt that the leases which were on the premises at the time the contract was executed were not then regarded by the parties as incumbrances within the meaning of the contract. The contract not only recognizes their existence, but expressly provides that the plaintiff should receive the rents to accrue therefrom from the date of the contract (*Pease* agt. *Christ*, 31 *N. Y. R., p.* 141, *which is directly in point, and nearly on all fours with this case*).

VII. But if such parol evidence was improperly admitted, we contend, as we claimed on the trial, that the contract itself contains sufficient evidence that the plaintiff, when he signed

it, had knowledge of leases then existing on these premises, the rent to accrue from which, from the date of the contract, it is therein stipulated should be paid to him.

There would be no meaning in this stipulation unless those leases were to continue in existence to the day appointed for the completion of the sale, and the plaintiff, therefore, had no right to object to any lease existing on the premises on that day, unless it was not in existence on the day of the date of the contract, and the burden of proving that fact was on him.

It was argued, on the other side, that the word "rents," in the contract, was used as a technical term, descriptive of the estate intended to be conveyed, and does not necessarily imply the existence of leases on the premises, the conveyance of real estate with its rents being another way of signifying that the conveyance was to be in fee.

But it must be remembered that this contract was not drawn by counsel learned in the law, but by one of the real estate agents concerned in the sale, and the word *"rents,"* as used by him, is therefore to be interpreted according to its *plain, ordinary and popular sense* (*Per Lord* ELLENBOROUGH, *Robertson* agt. *French*, 4 *East.*, 135; 1 *Bl. Comm.*, *p.* 59; *Sedg. on Stat. & Cons. Law*, *p.* 236; *Chitty on Contacts*, *p.* 80).

Knowledge of the existence of leases on the premises at the time the contract was made was sufficient to put the plaintiff upon inquiry, and was an implied notice to him of the rights of the tenants thereunder (*See Williamson* agt. *Brown*, 15 *N. Y. R.*, *p.* 354, *which reviews all the cases on this point*).

This rule is that a party in possession of certain information will be chargeable with a knowledge of all facts which an inquiry suggested by such information, prosecuted with due diligence, would have disclosed to him (*Id.* ; *The Kingston Bank* agt. *Eltinge*, 40 *N. Y.*, 396, *per* HUNT, *Ch. Comm.*).

VIII. It follows that the defendants were able, on the said 11th day of February, 1869, to convey to the plaintiff the premises in question, in accordance with their contract, and

Page agt. McDonnell.

duly offered to perform all the conditions of said contract on their part to be performed. And that, therefore, the plaintiff was not justified in refusing the deed which the defendants then tendered to him.

IX. The subsequent written offer of the plaintiff, made on the 29th April, 1869, was too late, even if it had not been coupled, as it was, with the condition that the premises should be free from all incumbrances except the mortgage provided for in the contract; which was equivalent to saying that the plaintiff still refused to accept the deed if the leases he objected to on the eleventh February, 1869, were still in existence.

X. The plaintiff's refusal on the 11th February, 1869, was absolute and final, unless those leases should be terminated. And if, as we have shown, he had no right to insist on that condition *then*, the defendant, Patrick McDonnell, was justified in renewing the leases, as he thereupon did. He would have been guilty of unheard of folly if, under the circumstances, he had allowed these valuable leases to expire.

XI. The plaintiff has never offered, but, on the contrary, has expressly refused, to accept a deed for the premises in question subject to said leases, and he does not even in this action pray for a specific performance of said contract unless he can get possession of said premises free from such leases.

XII. And under the circumstances of this case he cannot recover back the $2,000 paid by him on account of the purchase-money (*Ketchum* agt. *Evertson*, 13 *Johns.*, 363; *Stephens* agt. *Beard*, 4 *Wend.*, 605; *Simon* agt. *Kaliske*, 6 *Abbott's P. R.* [*N. S.*], 224; *Hansbrough* agt. *Peck, decided in the supreme court of the United States, and reported in the American Law Register, new series, vol. 7, p. 77*).

XIII. There is nothing in the point attempted to be made by the plaintiff, that the *defendants* have rescinded the contract in question, and that, therefore, upon settled principles of law and equity, he is entitled to recover back the portion of the consideration-money paid by him.

The only ground on which this is claimed is, that on the 11th July, 1869, the defendant, Patrick McDonnell, told the plaintiff that if he did not accept the deed then tendered him, he might consider the bargain at an end, and afterwards renewed the leases on the premises for the following year. This was a proceeding in affirmance, not in rescission of the contract, by enforcing a right of forfeiture which the law gave him, growing out of said contract, upon the refusal of the plaintiff to accept the deed duly tendered to him under it. This right was just as strong as if it had been expressly reserved in the contract (*See Hansbrough* agt. *Peck, ut supra ; Green* agt. *Green,* 9 *Cowen, p.* 46 ; *Haynes* agt. *Hart,* 42 *Barb., S. C. R., p.* 58).

In this case, JOHNSON, J., says : "I think no case can be found where a purchaser has been allowed to recover back partial payments after default in making further payments when the vendor has merely kept the property agreed to be sold, or *sold it* to another in consequence of such default."

See also *Ketchum* agt. *Evertson* (13 *John., p.* 364), in which it was held that the sale of property by the vendor, after the refusal of the vendee to accept a deed thereof in pursuance of his contract, was not a rescission of the contract by the vendor which would entitle the vendee to recover the portion of the purchase-money paid.

SPENCER, J., who delivered the opinion of the court, says : "To say that the subsequent sale of the land gives a right to the plaintiffs to recover back the money paid on the contract, would, in effect, be saying that the defendant could never sell it without subjecting himself to an action by the plaintiffs. The plaintiffs peremptorily refused to fulfill the contract; it was in vain, therefore, to keep the land for them. The plaintiffs cannot by their wrongful act impose upon the defendant the necessity of retaining property when his exigencies may require him to sell."

XIV. Besides, in any aspect of the case, to entitle the plaintiff to recover back the portion of the purchase-money

Page agt. McDonnell.

paid, he should have tendered the residue of the purchase-money, and demanded a deed, so as to put the defendants in default, which has not been done (*Hudson* agt. *E. & J. Swift*, 20 *Johns. R., p.* 26).

XV. This result renders it unnecessary to consider the plaintiff's exception to the exclusion of the testimony offered by him to show that about the months of February and March, 1869, the property in question went up in value and could have been sold at an advance. But it is well settled that only nominal damages are recoverable for the failure by a vendor to perform an executory contract for the conveyance of land made in good faith, and broken without fraud by reason of his inability to make a good title (*See Conger* agt. *Weaver*, 20 *N. Y. R., p.* 140; *Pumpelley* agt. *Phelps*, 40 *id., p.* 66; *Mack* agt. *Patchin*, 42 *id., p.* 172).

XVI. The judgment appealed from should be affirmed, with costs.

*By the Court,* INGRAHAM, *P. J.*—The plaintiff had a contract to purchase land of defendant, on which he made a payment. When the time fixed for delivering the deed arrived, the plaintiff objected to take it on account of an incumbrance of an assessment upon the property, but said he was willing to take the same when the defendants could give a deed according to the contract.

The assessment was paid and the deed tendered on the next day. The plaintiff again refused to take the title on account of leases which he said were on the property.

The justice found that such leases were known to plaintiff at the time of the purchase.

The tender of performance by the defendants, and refusal of plaintiff to accept the deed, terminated the contract on the part of the defendants, if there were no incumbrances on the property at the time.

It was not a rescission of the contract on their part, which

required a repayment of the purchase money to make such rescission valid.

It was a discharge by the plaintiff of the defendants' obligation, and did not entitle him to a repayment of the money paid on making the contract. Any such rule would enable a purchaser on the tender of a deed to refuse to complete his purchase, and then to claim back payment of the amount originally paid to bind the contract.

If neither party seeks to enforce the contract on the day fixed for performance, equity will give relief afterwards; but where the vendor tenders the deed and demands performance on the day, and the vendee refuses, he cannot afterwards seek in equity to be relieved from his own voluntary refusal to perform his contract.

The case of *Ketchum* agt. *Evertson* (13 *J. R.*, 359) is in point, both as to the rights of the plaintiff to have a decree for specific performance or to recover back the money paid by him on account of the contract.

The only inquiry, then, would be whether there was anything in the objection made by the plaintiff as to the leases on the premises until May first ensuing.

The justice found that the plaintiff knew of such leases at the time of making the contract, and they were not considered as incumbrances.

There was no other objection made, and the finding on this point is conclusive against the plaintiff.

We think there is nothing in the exceptions on the trial, and that the judgment should be affirmed.

WM. L. LEARNED and JNO. R. BRADY, JJ., concurred.